IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JOHN E. DAVIS and MARYLOU DAVIS, )
a married couple, )
                              Plaintiffs, )
  )
    vs. )
  )
BLUE AIRCRAFT, LLC, an Alaskan limited )
liability company; VENTURE TRAVEL LLC, )
an Alaskan limited liability company, d/b/a )
TAQUAN AIR; and MICHAEL J. HUDGINS, )
  ) No. 3:20-cv-0080-HRH
                            Defendants. )
_____)

O R D E R

Motion to Dismiss

Defendant Venture Travel, LLC moves to dismiss plaintiffs' maritime claims.[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

Background

Plaintiffs John E. (Jack) and Marylou Davis allege that on July 10, 2018, Jack Davis was on board a seaplane operated by Taquan Air that departed from Steamboat Bay on Noyes

---

[1]Docket No. 9.

[2]Docket No. 18.

-1-

Island Alaska and which was headed to the Ketchikan Harbor Seaplane Base.[3] Plaintiffs allege that the Seaplane "had two floats attached to its fuselage so that i[t] could land, float and take-off from water."[4] Plaintiffs allege that on the day in question "[t]he weather and visibility conditions were not good and appeared to be worsening before the Seaplane began a take-off run across the Bay."[5] Plaintiffs allege that "[t]he weather conditions . . . appeared to be worsening as Hudgins [the pilot] began to have the Seaplane climb above the water."[6] Plaintiffs allege that "Hudgins maneuvered the Seaplane in different directions as he tried to find areas of less dense fog and cloud cover."[7] Plaintiffs allege that "[d]uring most of the flight the Seaplane was flying at a low altitude above water."[8] Plaintiffs allege that "[a]s Hudgins flew into more thick clouds east of Hydaburg and as he entered Sultzer Portage, he began turning the Seaplane south and increasing the altitude, but then leveled off."[9] Plaintiffs allege that "[a]s the Seaplane was flying through thick clouds and fog with near zero visibility, Hudgins suddenly pushed the throttles to full power and the engine noise rose

---

[3]Complaint at 2, ¶¶ 1-4, Docket No. 1.

[4]Id. at 8, ¶ 54.

[5]Id. at 9, ¶ 67.

[6]Id. at 10, ¶ 69.

[7]Id. at 10, ¶ 73.

[8]Id. at 10, ¶ 77.

[9]Id. at 10, ¶ 79.

dramatically."[10] Plaintiffs allege that "[t]his alarming change in the flight caused Jack Davis to look out the front window of the Seaplane where he suddenly saw a mountain looming immediately ahead."[11] Plaintiffs allege that there was then "a sudden violent and loud crash as the Seaplane hit the mountain."[12] Plaintiffs allege that "[t]he Seaplane came to rest in an area known as Mount Jumbo on Prince of Wales Island sustaining substantial damage to [its] wings and fuselage."[13] Plaintiffs allege that after receiving a report that a seaplane had crashed near Sultzer Portage on Prince of Wales Island, the United States Coast Guard launched two rescue helicopters.[14] Plaintiffs allege that Jack Davis, the other passengers, and Hudgins were rescued by a United States Coast Helicopter which "lowered a rescue swimmer" down to the wreckage and "hoisted" them up to the helicopter.[15]

Plaintiffs allege that "Jack Davis has a severe and permanent injury that limits his mobility and causes pain and discomfort as a result of the Taquan Seaplane crash of July 10, 2018."[16]

---

[10] Id. at 11, ¶ 80.

[11] Id. at 11, ¶ 81.

[12] Id. at 11, ¶ 82.

[13] Id. at 11, ¶ 84.

[14] Id. at 12, ¶ 96.

[15] Id. at 13, ¶¶ 101-103.

[16] Id. at 14, ¶ 112.

-3-

Plaintiffs commenced this action on April 6, 2020. In their complaint, plaintiffs assert claims of negligence, negligent misrepresentation, vicarious liability, and negligent selection and retention. Plaintiffs allege that the court has diversity jurisdiction as to all of their claims. And, in the alternative, plaintiffs allege that the "[c]ourt has subject matter jurisdiction over [their] claims under the maritime and admiralty jurisdiction of the [c]ourt[.]"[17]

Pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, defendant now moves to dismiss plaintiffs' maritime claims on the grounds that the court lacks admiralty jurisdiction.

Discussion

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal

---

[17]Id. at 4, ¶ 26.

> Plaintiffs may bring maritime law claims under either diversity jurisdiction or admiralty jurisdiction. Under either jurisdictional statute, federal maritime law govern[s] if the claim comes within the admiralty and maritime jurisdiction conferred on the district courts by the Constitution and the jurisdictional statutes. In other words, if the district court could have maritime jurisdiction over a tort claim, [s]ubstantive maritime law controls the claim, whatever the forum or asserted basis of jurisdiction.

Adamson v. Port of Bellingham, 907 F.3d 1122, 1125-26 (9th Cir. 2018) (internal citations omitted).

jurisdiction." Id. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. Defendant contends that it is making a facial attack. The court "therefore 'assume[s] [plaintiffs'] [factual] allegations to be true and draw[s] all reasonable inferences in [their] favor.'" Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (quoting Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004)). The court does not, "however, accept the 'truth of legal conclusions merely because they are cast in the form of factual allegations.'" Id. (quoting Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)).

Plaintiffs do not contend that "[t]he traditional test for admiralty tort jurisdiction" applies in this case. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 531 (1995). Rather, they contend that there is admiralty jurisdiction pursuant to the Admiralty Extension Act ("AEA"). The AEA provides that "[t]he admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101(a). "[A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity." Grubart, 513 U.S. at 534; see also, Gruver v. Lesman Fisheries Inc., 489 F.3d 978, 982 (9th Cir. 2007) ("a party seeking to invoke federal maritime jurisdiction over a tort claim must satisfy both a location test and a connection test").

"The location test focuses on 'whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water.'" Id. (quoting Grubart, 513 U.S. at 534). "[T]he clear law of" the Ninth Circuit is "that the situs of a tort for the purpose of determining admiralty jurisdiction is the place where the injury occurs." Taghadomi v. United States, 401 F.3d 1080, 1084 (9th Cir. 2005). "[T]he nonmaritime location of the injury is normally dispositive." Whitcombe v. Stevedoring Services of Amer., 2 F.3d 312, 315 (9th Cir. 1993).

Here, the Seaplane crashed on land, rather than in navigable water, but plaintiffs argue that does not mean that the location test is not met. Plaintiffs contend that "water-based causes of injury on land" can meet the location test. Lu Junhong v. Boeing Co., 792 F.3d 805, 816 (7th Cir. 2015). As the court in Grubart explained, "[t]he purpose of [the AEA] was to end concern over the sometimes confusing line between land and water, by investing admiralty with jurisdiction over 'all cases' where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." Grubart, 513 U.S. at 532. Plaintiffs argue that their injuries were caused by a vessel on or over navigable water, even though the crash itself happened on land.

First, plaintiffs argue that the Seaplane is a vessel for purposes of admiralty jurisdiction. Plaintiffs cite to United States v. Northwest Air Service, 80 F.2d 804 (9th Cir. 1935), in support of this argument. There, the Ninth Circuit observed that "a seaplane, while afloat on navigable waters of the United States, may be a vessel within the admiralty

-6-

jurisdiction[.]" Id. at 805. Plaintiffs also cite to Hark v. Antilles Airboats, Inc., 355 F. Supp. 683, 685 (D.C. Virgin Islands 1973), in which the court also observed that "[w]hen a seaplane is floating on the water it is for practical purposes a vessel." Plaintiffs also point out that the United States Coast Guard inland navigation rules define a "vessel" to include a "seaplane[]," which in turn is defined as "any aircraft designed to maneuver on the water." 33 C.F.R. § 83.03(a), (e). Thus, plaintiffs argue that the Seaplane at issue in this case should be considered a "vessel."

The term "vessel" is defined in 1 U.S.C. § 3 as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." If there is a definition that applies to "vessel" as that term is used in the AEA, it is likely this definition,[18] which the Seaplane plainly does not meet. See, e.g., United States v. Peoples, 50 F. Supp. 462, 463 (N.D. Cal. 1943) ("the weight of authority holds that the term 'vessel' does not include a seaplane").

But even if the Seaplane is considered a vessel for purposes of the AEA, the location test has not been satisfied because plaintiffs' injuries were not "caused by" the Seaplane while it was on or over navigable waters. Courts have read "caused by" as requiring proximate cause. See, e.g., Adamson, 907 F.3d at 1132 n.10 ("the vessel was clearly a

---

[18] "§ 3 continues to supply the default definition of 'vessel' throughout the U.S. Code, 'unless the context indicates otherwise.'" Stewart v. Dutra Const. Co., 543 U.S. 481, 490 (2005) (quoting 1 U.S.C. § 1)).

proximate cause of the damage"); Scarborough v. Clemco Industries, 391 F.3d 660, 664 (5th Cir. 2004) ("[f]or the vessel to be a cause of Scarborough's injuries . . . the vessel must have been a proximate cause of his injuries). Plaintiffs' arguments that the Seaplane was the proximate cause of their injuries fail.

Plaintiffs argue that the Seaplane was the proximate cause of their injuries because they have alleged that it was negligent for pilot Hudgins to cast off from the Steamboat Bay dock and take off from the navigable waters of the Gulf of Esquibel with passengers on board. Thus, they argue that their injuries were caused by a vessel <u>on</u> navigable waters.

Plaintiffs are, however, focusing on what <u>Hudgins</u> did rather than on what the <u>vessel</u> did. As one court explained,

> [b]y the [Admiralty Extension] Act's express terms . . . the injury must be caused "by a vessel." Appellants have cited <u>Gutierrez v. Waterman S.S. Corp.</u>, for the proposition that "there is no distinction in admiralty between torts committed by the ship itself and by the ship's personnel." 373 U.S. 206, 210 (1963). However, the situation in <u>Gutierrez</u>, as well as in the vast majority of other cases in which admiralty jurisdiction has been predicated on the 'consummated on land' provision of 46 U.S.C. § 740,[19] involved physical injury or damage done by the vessel. Section 740, by its very terms applies to "damage" and "injuries". . . . [S]ince <u>Gutierrez</u>, the Supreme Court has clearly indicated that the Act means the vessel and her appurtenances, <u>and does not include those performing actions for the vessel</u>. See <u>Victory Carriers, Inc. v. Law</u>, 404 U.S. 202, 210–12 (1971) (clarifying that jurisdiction in <u>Gutierrez</u> turned solely on the fact that the injury was caused by an appurtenance of the ship). Because the complained of conduct was not caused by the vessel

---

[19]Prior to October 5, 2006, the AEA was codified at 46 U.S.C. Appx. § 740.

>itself or its appurtenances, appellants claims do not fall under
>the ambit of 46 U.S.C. § 740.

Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey, 183 F.3d 453, 456 (5th Cir. 1999) (emphasis added). In short, "the AEA applies only if the vessel or its appurtenances caused the injury to an individual on land." Rios v. United States, Case No. 16-cv-10191, 2017 WL 1826496, at *4 (D. Mass. May 5, 2017). Plaintiffs have not alleged that their injuries were caused by the Seaplane itself. They allege that "Hudgins made negligent decisions to cast off from Steamboat Bay dock with passengers on board with deteriorating weather and visibility conditions[,]" "Hudgins made negligent decisions to take off from the navigable waters of Steamboat Bay with passengers on board with deteriorating weather and visibility conditions[,]" and "Hudgins made negligent decisions to continue flying into deteriorating weather and visibility conditions while over water and when a water landing was available."[20] Plaintiffs are alleging that their injuries were caused by Hudgins' negligence, not by the Seaplane itself.

But even if their injuries were not caused by a vessel (the Seaplane) on navigable waters, which they were not, plaintiffs argue that their injuries were caused by events over navigable waters. Plaintiffs cite to Lu Junhong, 792 F.3d 805, in support of this argument. There, on landing from a flight from Seoul, Korea, "a Boeing 777 hit the seawall that separates the ocean from the end of a runway at San Francisco International Airport." Id. at

---

[20]Complaint at 5, ¶ 28b, c, and d, Docket No. 1.

807. "The National Transportation Safety Board concluded that the principal cause of the accident was pilot error: the pilots approached too low and too slow, and by the time they attempted to add power and execute a missed approach, it was too late." Id. The court observed that "[t]his plane crossed the Pacific Ocean, a traditional maritime activity, and the cause of the accident likely occurred over the water. But an airplane is not a "vessel" and it was 'over' rather than 'on' the water." Id. at 815. The question was whether this made a difference. Id. As to the airplane, the court found that it did not because "[a]n airplane, just like an ocean-going vessel, moves passengers and freight from one continent to another. It crosses swaths of the high seas that are outside of any nation's territory, and parts of the seas adjacent to the United States but outside any state's territory." Id. As to the "over" versus "on" the water question, the court concluded that this also did not make a difference, explaining that

> [t]he Supreme Court's holding in Offshore Logistics that an accident caused by problems in airplanes above water should be treated, for the purpose of § 30302,[21] the same as an accident

---

[21]Section 30302, which is part of the Death on the High Seas Act, provides:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

(continued...)

>     caused on the water carries the implication that the general admiralty jurisdiction of 28 U.S.C. § 1333(1) also includes accidents caused by problems that occur in trans-ocean commerce.

Id. at 816.

Here, plaintiffs contend that they have alleged that while the injuries to the passengers on the Seaplane took place on land, it is possible that the accident was caused by events that occurred over navigable water. They point out that they have alleged that "[t]he weather and visibility conditions were not good and appeared to be worsening as Hudgins began to have the Seaplane climb <u>over the water</u>[,]" that [o]nce airborne Hudgins flew the Seaplane . . . <u>over water</u>", and that "[d]uring most of the flight the Seaplane was flying at a low altitude <u>above water</u>."[22] Plaintiffs insist that these allegations are sufficient to show that their injuries were caused by events that occurred over navigable water.

Plaintiffs' reliance on <u>Lu Junhong</u> is misplaced, in part, as that case did not involve the AEA, but rather the Death on the High Seas Act. But, more important, the events that occurred over navigable water in this case were decisions made by Hudgins. Plaintiffs are again focusing on what Hudgins did and the decisions he made. In order to satisfy the location test, plaintiffs must show that their injuries were caused by the vessel itself. This plaintiffs have not done. For purposes of the instant motion, the court accepts plaintiffs'

---

[21](...continued)
46 U.S.C. § 30302.

[22]Complaint at 10, ¶¶ 69, 70, 77, Docket No. 1 (emphasis added).

Case 3:20-cv-00080-HRH   Document 31   Filed 07/23/20   Page 11 of 12

allegations as true. Plaintiffs have alleged that their injuries were caused by Hudgins' negligence. They have not alleged that although their injuries were "suffered on land[,]" their injuries were "caused by a vessel on [or over] navigable water." Gruver, 489 F.3d at 982 (citation omitted).

Because plaintiffs have not satisfied the location test, the court need not consider whether the connection test has been met.[23]

## Conclusion

Defendant's motion to dismiss[24] plaintiffs' maritime claims is granted because the court does not have admiralty jurisdiction over plaintiffs' claims.

DATED at Anchorage, Alaska, this 23rd day of July, 2020.

/s/ H. Russel Holland
United States District Judge

---

[23] Had the court considered the connection test, it would have found that neither prong of that test was met. As for the first prong, the court, based on the allegations in plaintiffs' complaint, would have found that the role of the Coast Guard in this case would not have had any disruptive impact on maritime commerce. As for the second prong, while a closer question, the court would have found, based on the allegations in plaintiffs' complaint, that "the general character of the activity giving rise to the incident" did not "show[] a substantial relationship to traditional maritime activity." Grubart, 513 U.S. at 534 (citation omitted).

[24] Docket No. 9.